# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9307 | **DATE** | 1/12/2005 |
| **CASE TITLE** | United States of America, ex rel. Miguel Sedano vs. James Cox, Warden, Logan Correctional Center | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Petitioner's Petition for Writ of Habeas Corpus

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached memorandum opinion and order, Petitioner's Petition for a Writ of Habeas Corpus [Doc. No. 1] is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 14 2005 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mvf(lc) | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. MIGUEL SEDANO, Petitioner, v. JAMES COX, Warden, Logan Correctional Center Respondent. | No. 01 C 9307<br>HONORABLE DAVID H. COAR |



## MEMORANDUM OPINION AND ORDER

Before this Court is Miguel Sedano's ("Sedano" or "Petitioner") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, this Court denies the petition.

### I. Factual Background

Following a bench trial in the circuit court of Cook County, Miguel Sedano was convicted of first-degree murder and sentenced to twenty-seven years imprisonment. Sedano now petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner presents two justifications for his habeas petition: first, that the circuit court erred in not suppressing his inculpatory statement to the police as coerced and involuntary; and second, that he was illegally arrested without probable cause.

The underlying facts of this case are as follows. Miguel Sedano was arrested on September 7, 1991, and charged with first-degree murder for the fatal shooting of Dorian Ruffin

on August 19, 1991, at 1500 North Western Avenue in Chicago. Chicago Police Detective Stephen Gawrys testified at the trial court's hearing on Sedano's motion to quash arrest that on September 4, 1991, he arrested Jose Luque for unlawful use of a weapon. Two days later, Luque telephoned Gawrys and offered to provide information regarding two shootings in which four individuals had been injured. On the morning of September 7, 1991, Luque went to the police station to speak with Gawrys about the shootings. During this conversation, Luque stated that he had information about the August 19, 1991 shooting. Luque told Gawrys that Sedano had admitted shooting someone at the time and place of the August 19, 1991 shooting. Luque acknowledged that he had been with Sedano in the immediate vicinity of the shooting just before the murder occurred. He stated that he later returned to Sedano's house and found Sedano cleaning a .25-caliber automatic weapon.

After receiving Luque's information, Detective Gawrys asked Luque to go to Sedano's home and lure Sedano out to the street so he could be arrested outside his house. At approximately noon on September 7, 1991, Luque led Sedano to the street outside his house, where Gawrys and Chicago Police Detective William Johnston, took him into custody for questioning about the August 19 murder. Gawrys did not have a warrant for Sedano's arrest, nor did he attempt to obtain one at any point. Although Gawrys' written police report stated that Sedano was placed under arrest at approximately 5:30 p.m. on September 7, Gawrys testified at the hearing on the motion to quash that Sedano was not free to leave the police interrogation room after he arrived there at approximately one p.m.

Upon his arrival at the police station, Sedano was placed in an interrogation room and advised of his constitutional *Miranda* rights. The police officers contacted the Youth Division at

approximately 1 p.m. to notify them of Sedano's arrest. He was then questioned by detectives Gawrys and Johnston about the August 19 shooting. Sedano initially denied any knowledge about the shooting. Sedano testified that he told the police he did not wish to make a statement, but wished to see his mother and a lawyer, which requests the police denied. Sedano also stated that Johnston told him there were "two ways to go in this situation": either say nothing and be tried as an adult, or make a statement and be tried as a juvenile. Moreover, Sedano asserted, Johnston told him that it appeared as though Sedano had a case for self-defense. Prior to making his first inculpatory statement, Sedano stated, he and the officers "agreed" he would be tried as a juvenile. Both Johnston and Gawrys testified that they made no representations to Sedano about leniency or the possibility of being tried as a juvenile. The officers further testified that at no time did Sedano state he did not wish to make a statement or ask to speak to his parents or a lawyer.

Sedano subsequently made two inculpatory statements, including a confession, to the detectives between approximately 2:30 and 3 p.m. Youth Officer Thomas West arrived at the station at approximately 5 p.m. and spoke with Sedano. West verified that Sedano knew why he had been arrested. West also contacted Sedano's parents after Sedano indicated he was unsure if they had been notified of his arrest. West testified that Sedano stated he did not wish to see his mother because he did not wish to upset her with the reason for his arrest.

Sedano made a third inculpatory statement at approximately 7:30 p.m. to Assistant State's Attorney ("ASA") Donna Norton, who then reduced the statement to writing. Sedano stated that he agreed to make a statement after he asked Norton if he would be tried as a juvenile as agreed with the police officers, and she confirmed that he would be. Norton read the written statement aloud to Sedano, but would not allow him to read it himself. Sedano asked to speak to his

mother, which he was allowed to do at approximately 9:30 p.m. Sedano's mother testified she told Sedano to sign the statement so that he could be tried as a juvenile. After his conversation with his mother, Sedano again met with ASA Norton, made some changes to the written statement, and signed it. Norton testified that she made no statement to Sedano about the possibility of being tried as a juvenile; in fact, she stated that she told him he would be tried as an adult. Norton denied that she or anyone else had ever told Sedano or his mother that he would be tried as a juvenile or granted any other form of leniency if he signed an inculpatory statement.

Prior to trial, Sedano filed a motion to quash his arrest on the ground that the police lacked probable cause to justify a warrantless arrest. He also sought to suppress his inculpatory statements as the product of an illegal arrest. In addition, Sedano filed a motion to suppress his inculpatory statements on the ground that they were involuntarily given because they were induced by promises that he would be tried as a juvenile if he confessed, and because they were made in the absence of a parent or other adult interested in his welfare.

The trial court held a hearing; heard testimony from witnesses, including Sedano, ASA Norton, Officer Gawrys, Officer Johnston, Officer West, and Sedano's mother; and denied both motions. The trial court determined that the Chicago Police Department engaged in subterfuge in using Luque to lure Sedano out of his house so he could be arrested on the street. However, the trial court stated that the police officers' actions were justified by exigent circumstances due to the violent nature of the crime, and that they had sufficient information to have probable cause to effect a warrantless arrest. In denying Sedano's motion to suppress his inculpatory statement, the trial court specifically rejected Sedano's claim that his inculpatory statements had been coerced

by the police and the Assistant State's Attorney through promises that he would be tried as a juvenile if he confessed.

## II. Procedural Background

Petitioner Miguel Sedano is incarcerated at the Logan Correctional Center. He was convicted of first-degree murder after a bench trial and sentenced to twenty-seven years in the Illinois Department of Corrections on January 7, 1993. Petitioner filed a notice of direct appeal on January 13, 1993, though his attorney, the Public Defender of Cook County, Illinois. In that notice, Petitioner alleged five grounds on which to overturn his sentence: 1) that the trial court erred in denying his motion to quash arrest; 2) that the trial court erred in denying his motion to suppress inculpatory statements made following arrest; 3) that he had not been proven guilty beyond a reasonable doubt; 4) that his sentence was excessive; and 5) that the statute under which he was convicted was unconstitutional. The Appellate Court of Illinois, First District, affirmed his conviction and sentence on July 28, 1995.

Petitioner, through his attorney, the Public Defender of Cook County, Illinois, then filed a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court in August 1995. In his PLA, Petitioner contended that he was illegally arrested without probable cause, and that the trial court's denial of his motion to suppress statements was manifestly erroneous under the totality of the circumstances standard. The Illinois Supreme Court denied Petitioner's PLA in a mandate issued on December 28, 1995.

Petitioner filed a petition for post-conviction relief pro se on December 27, 1995, pursuant to 725 ILCS 5/122-1(c). The Circuit Court of Cook County denied the petition on March 4, 1998. Petitioner then filed a Notice of Appeal from the denial of his Petition for Post-

Conviction Relief on March 31, 1998, in which he alleged a violation of Illinois Supreme Court Rule 651(c). On September 10, 1999, the People of the State of Illinois filed a brief confessing error and requesting the Appellate Court of Illinois, First District, to remand the Petitioner's Petition for Post-Conviction Relief to the Circuit Court of Cook County for a hearing. This request was granted on September 17, 1999. The Petition for Post-Conviction Relief remained pending before the Circuit Court of Cook County until March 12, 2001, when counsel for Petitioner in this matter reviewed the record and determined that there were no new issues of merit. Petitioner's counsel then withdrew the Petition.

On December 5, 2001, Petitioner filed the Petition for Writ of Habeas Corpus currently pending before this Court. In his Petition, Sedano alleges first, that the trial court erred in not suppressing his inculpatory statement to police, because he was only fifteen years old when arrested, he had no prior criminal background, and no parent or youth officer was present during repeated interrogation by experienced police detectives or at the time of the signing of his statement; and second, that he was arrested illegally without probable cause. On January 11, 2002, this Court ordered the Petitioner to show cause why his petition should not be dismissed as untimely filed. On February 14, 2004, this Court ordered Respondent to answer or otherwise plead to the Petition.

### III. Habeas Corpus Standard

Section 2254 empowers federal district courts to hear petitions for a writ of habeas corpus on behalf of a person in state custody on the ground that he or she is in custody in violation of the Constitution, treaties, or laws of the United States. 28 U.S.C. § 2254(a) (1996); *see Wainwright v. Sykes*, 433 U.S. 72, 77 (1977). A federal court may only consider the merits of a writ of habeas

corpus after the petitioner has (1) exhausted all available state court remedies; and (2) first presented any federal claim in state court. *See* 28 U.S.C. § 2254(c) (1996); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Jones v. Washington*, 15 F.3d 671, 674 (7th Cir. 1994). Any claim that has not been exhausted in the available state courts will be considered defaulted and therefore procedurally barred.

A federal court will not grant relief on claims that have been decided on the merits by state courts unless the state court's decision "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1) (1996), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2) (1996).

## IV. Analysis

### A. Petitioner's Claim That Circuit Court Erred In Denying Motion To Suppress Confession

Petitioner alleges that the state trial court erred in denying his motion to suppress his inculpatory statement to the police. Petitioner contends that the totality of the circumstances indicates that his inculpatory statement to police was coerced and involuntary, and therefore should have been suppressed. According to Petitioner, his confession was coerced by a promise that he would be tried as a juvenile if he confessed. Moreover, Petitioner contends, he was interrogated without the presence of a parent or other adult interested in his welfare. Specifically, Petitioner argued in his state court appeals that approximately four hours elapsed between his arrival at the police station house and the appearance of a youth officer in the interrogation room;

Petitioner contends this created an inherently coercive situation. *See People v. Sedano*, No. 1-93-0591, slip op. at 32 (Ill. App. Ct. July 28, 1995). The State responds that the appellate court addressed the question of whether Sedano's confession was voluntary and determined that, under the totality of the circumstances, it was not coerced. On habeas review, a state court's factual findings are entitled to a presumption of correctness. *See Sumner v. Mata*, 449 U.S. 539 (1981). The State argues that the appellate court's finding thus should be upheld.

When a coerced statement is used in a state court criminal trial, it violates the due process clause of the Fourteenth Amendment. *See Weidner v. Thieret*, 866 F.2d 958, 960 (7th Cir. 1989). A federal district court asked to determine whether a confession was coerced or involuntary must make up its own mind on the question. *See id.* When examining mixed questions of law and fact, the federal court must defer to state court findings of fact, but it must determine for itself whether the facts constitute coercion. *Id.*

A statement will be considered involuntary or coerced if the defendant's will is overcome at the time he makes the statement or confesses. *See People v. House*, 566 N.E.2d 259 (Ill. 1990). When making a voluntariness determination, a court must consider "the age, education and intelligence of the accused, the length of the detention and the duration of the questioning, whether the accused was advised of his constitutional rights, and whether the accused was subjected to any physical mistreatment." *Id.*

In its review of Sedano's direct appeal, the Appellate Court of Illinois for the First Judicial District noted that the "test for voluntariness is whether the statement was made freely and without compulsion or inducement of any sort or whether the defendant's will was overcome at the time he confessed." *People v. Sedano*, No. 1-93-0591, slip op. at 29-30 (Ill. App. Ct. July

28, 1995). The voluntariness of a confession is determined by analyzing the totality of the circumstances. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). A court may consider a range of factors, including defendant's age, background, experience, intelligence, mental capacity and ability, education, and physical condition. In addition, Illinois courts analyze the confession of a juvenile using the same test that they use for an adult, but also consider the presence or absence of a parent or other adult interested in the juvenile's welfare during the questioning. After applying this totality of the circumstances test to the facts of Petitioner's case, the appellate court concluded that a delay in providing a youth officer to a juvenile defendant by itself will not render the defendant's statement involuntarily. In making this determination, the appellate court emphasized that the youth officer had been notified of the defendant's presence in custody and that the defendant had been given *Miranda* warnings. *Sedano*, No. 1-93-0591, slip op. at 31-32.

A federal district court will defer to the state courts factual determinations on habeas review. As such, this Court concludes that Sedano was given food and drink and the opportunity to use the restroom. In addition, the defendant was advised of his *Miranda* rights, which he indicated he understood. *Sedano*, No. 1-93-0591, slip op. at 5. Petitioner was able to meet with his mother and with a youth officer after making, but before signing, the inculpatory statement. There was no evidence that petitioner was subjected to any sort of physical or mental abuse. The appellate court further noted that petitioner "was in custody for only a short time before he gave his first inculpatory statement and was fed and allowed to use the restroom." *Sedano*, No. 1-93-0591, slip op. at 31. Moreover, the trial court specifically rejected Petitioner's claim that the police or the Assistant State's Attorney promised him leniency in exchange for his signed

confession at the conclusion of its suppression hearing. In light of the relevant factors described above, the appellate court could not "conclude that the trial court's determination that defendant's confession was voluntary was against the manifest weight of the evidence." *Sedano*. No. 1-93-0591, slip op. at 33. This Court will not disturb that determination.

The fact that Petitioner was questioned alone for several hours without a parent or interested adult present is troublesome. Under applicable law, however, such a circumstance is not enough to permit this Court to find such questioning inherently coercive. The trial court heard testimony on Petitioner's motion to suppress his inculpatory statement to police and determined that Petitioner's argument was not credible. This Court will not disturb the factual findings of the trial court unless they are clearly erroneous. *Andersen v. Thieret*, 903 F.2d 526, 530 (7th Cir. 1996) (citing *Sumner v. Mata*, 449 U.S. 539, 547 (1981)). The appellate court noted that the trial court found that "the credible evidence adduced at the [suppression] hearing" was insufficient to support Petitioner's motion to suppress.

For the purpose of resolving this petition, this Court notes that subsection 2254(d) applies a presumption of correctness to the factual findings of both the state trial and appellate courts. 28 U.S.C. § 2254(d) (1996); *Andersen*, 903 F.2d at 531. Petitioner has failed to show that the state court's decision not to suppress his inculpatory statement to police was "contrary to, or involved an unreasonable application of clearly established federal law," as interpreted by the United States Supreme Court, 28 U.S.C. § 2254(d)(1) (1996), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2) (1996). For the reasons described above, this Court denies Petitioner's petition for a writ of habeas corpus on ground one.

### B. Petitioner's Claim That He Was Illegally Arrested Without Probable Cause

Petitioner's second ground for his petition for writ of habeas corpus is that he was arrested illegally without probable cause. The police took Sedano into custody on the street outside his house. He was "lured" out of his house by the informant, Jose Luque, because the police did not have a warrant to arrest him in his house. *Sedano*, No. 1-93-0591, slip op. at 28. Specifically, he asserts that his arrest was based on a general tip from an informant who was himself facing criminal charges, and that the police made no attempt to corroborate the tip or establish the informant's veracity. Respondent argues that this claim is based on the Fourth Amendment, and therefore is not amenable to collateral review. *Stone v. Powell*, 428 U.S. 465 (1976).

In *Stone v. Powell*, the United State Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 495. The Seventh Circuit has articulated a three-part test to determine whether a petitioner has received such a "full and fair opportunity" in state court. The federal court must ask if (1) the petitioner clearly informed the state court of the factual basis for his claim and argued that those facts constitute a violation of his Fourth Amendment rights; (2) the state court carefully and thoroughly analyzed the facts; and (3) the state court applied to proper constitutional case law to the case. *Weber v. Murphy*, 15 F.2d 691, 694 (7th Cir. 1994) (cited in *U.S. ex rel. McDonald v. Page*, 108 F. Supp. 2d 993, 1001 (N.D. Ill. 2000)).

Petitioner satisfies the first element of the *Weber* test. Sedano clearly informed the Illinois courts of this issue by raising it in a motion to suppress, on direct appeal, and in his post-conviction petition. Sedano has met his burden of presenting the issue to the Illinois state courts.

Petitioner does not satisfy the second element of the *Weber* test, however, because he does not establish that the state court failed to carefully and thoroughly consider the facts underlying his claim. The record provides ample indication that the state courts analyzed the probable cause issue. In fact, the state trial court held a hearing on Petitioner's motion to quash his arrest at which Petitioner and both of the arresting officers testified under oath in court and were subject to cross-examination. The trial court denied Petitioner's motion to quash, determining that the officers had probable cause for the arrest, and that the warrantless arrest was justified by the exigent circumstances of the case. Petitioner filed an appeal, alleging the same constitutional violation he alleges in this Petition. The appellate court also thoroughly analyzed the facts of the case, and affirmed the denial of Petitioner's motion to quash. *Sedano*, No. 01-93-0591, at 20-29. Petitioner's argument attacks the merits of those decisions and is improper under *Stone v. Powell*. Therefore, this Court denies Petitioner's motion on this ground.

Finally, this Court notes that Sedano fails to satisfy the third element of the *Weber* test, which requires the state court to apply the correct constitutional law to the facts of the case. Sedano waives the point by not pleading any facts that would support a finding that the state courts were in error. The appellate court stated that under the applicable Supreme Court case law, probable cause is established when the State shows that the "facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution to believe that the defendant has committed the offense." *Sedano*, No. 01-93-0591, slip op. at 21 (citing

*Illinois v. Gates*, 462 U.S. 213 (1983)). This is the proper constitutional case law for the facts of this case. Petitioner therefore is unable to meet the third element of the *Weber* test.

**Conclusion**

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus is denied.

Enter:

*/s/ David H. Coar*

David H. Coar
United States District Judge

Dated: **January 12, 2005**